IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JOHN D. SHAW,

               Petitioner,

     v.                               Civil Action No.
                                       9:02-CV-163 (FJS/DEP)

TODD CRAIG,[1] Warden, F.C.I. Ray Brook,

               Respondent.

_____

APPEARANCES:             OF COUNSEL:

FOR PETITIONER:

JOHN D. SHAW, *Pro Se*

FOR RESPONDENT:

HON. GLENN T. SUDDABY      WILLIAM C. PERICAK, ESQ.
United States Attorney         Assistant U.S. Attorney
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, NY 12207-2924

DEPT. OF HOMELAND SECURITY   JAMES W. GRABLE, ESQ.
Bureau of Immigration
and Customs Enforcement
130 Delaware Avenue, Room 203

_____

      [1]     Shaw's petition, which was filed in 2002, appropriately named Ronald Wiley, who was then the warden at the Ray Brook Federal Correctional Institution ("FCI Ray Brook"), as the respondent. Since Todd Craig has since assumed that role, the clerk's office is therefore directed to adjust its records to reflect substitution of that individual as the named respondent in this action, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

Buffalo, New York 14202

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Petitioner John D. Shaw, a federal prison inmate as a result of a
2002 conviction from this district for unlawful reentry into the United States
following deportation, has commenced this proceeding requesting this
court's assistance in overturning his conviction.  In his petition, which is
styled has having been brought pursuant to 28 U.S.C. § 2241, Shaw in
essence seeks a determination that at the relevant times, including both
when he was previously removed from the country and at the time of re-
entry into the United States, he was a United States citizen.  Although
taking no stance as to the procedural propriety of Shaw's section 2241
petition or its timeliness, respondent challenges its merits, treating it
principally as an attack upon the sufficiency of the representation which he
received leading up to his conviction.

Having carefully reviewed the matter, I find that Shaw's petition is
more appropriately regarded as a motion to vacate his judgment of
conviction pursuant to 28 U.S.C. § 2255, and that when considered in that
context it is facially untimely notwithstanding the arguments which he

2

asserts as a basis for excusing him from the one year period for filing

such a motion.  Since respondent has not raised, in defense of his

petition, either timeliness or the propriety of Shaw seeking relief under

section 2241, however, I recommend a finding that those defects have

been waived.  Turning to the merits, I find that Shaw's argument in

support of his petition is flawed, since it turns upon his contention that he

is a United States citizen, which is not the case.

I.      BACKGROUND

Petitioner was born in Canada on January 2, 1958.  *See* Response

to Petition (Dkt. No. 26) Attachment, at 2.  Petitioner's father, John Joseph

Shaw, was born in Kansas City, Missouri on November 1, 1935, but in

1940 moved to Canada, where he and his family resided until 1965, with

the exception of short vacation trips to the United States.  *Id.*  Petitioner's

mother, Patricia Shaw (nee Shears), was born in Canada, and was never

a United States citizen.  *Id.*

On December 16, 1999 Shaw, then a citizen of Canada who had

twice before been deported, was ordered removed from the United States.

*See* Criminal Action No. 00-CR-307, Dkt. No. 12 (Plea Agreement) at 4;

*see also* Response to Petition (Dkt. No. 26) at 2-3.  Petitioner was

3

removed from the United States pursuant to that order on January 5, 2000

after having served five and one-half years of a seven year sentence of

imprisonment imposed in connection with a conviction in Florida for

kidnaping and sexual battery.  *Id.*

On June 8, 2000 petitioner was arrested while attempting to enter

the United States at Champlain, New York, under an assumed name,

without first having secured the consent of appropriate United States

authorities.  Criminal Action No. 00-CR-307, Dkt. No. 12 (Plea Agreement)

at 4; *see also* Response to Petition (Dkt. No. 26) at 2.  Following the filing

of a criminal complaint and his detention on the charge contained within it,

petitioner was indicted on June 21, 2000 and accused of unlawfully

reentering the United States following removal, without first having

secured permission from the proper government authorities, in violation of

8 U.S.C. § 1326.  Petitioner was ultimately convicted on that charge,

based upon a plea entered on August 21, 2000, and was sentenced on

December 13, 2000 principally to a term of incarceration of forty-six

months.  *See United States v. Shaw*, Criminal Action No. 1:00-CR-0307

(LEK), Dkt. Entries dated 8/21/00, 12/13/00 and Dkt. No. 17 (Judgment of

Conviction).  In connection with that conviction petitioner admitted in a

4

written plea agreement that he is a native and citizen of Canada, and that he had been previously removed from the United States on three separate occasions.  *See* 1:00-CR-0307 (LEK), Dkt. No. 12 (Plea Agreement) at 4. Petitioner did not appeal his conviction to the United States Court of Appeals for the Second Circuit.

As a result of his conviction from this court, petitioner was transferred into the custody of the United States Bureau of Prisons ("BOP") and assigned to that agency's Ray Brook Federal Correctional Institution ("FCI Ray Brook").  Although the petitioner has not fulfilled his obligation to notify the court and respondent's counsel of his change of circumstances, the court has of its own initiative determined that Shaw has been transferred into a prison facility in British Columbia, Canada where he is currently incarcerated based upon circumstances which are not readily apparent to the court.[2]

II.   PROCEDURAL HISTORY

A.   Administrative Proceedings

_____Petitioner filed an application on January 7, 2002 with the

---

[2]     This court's local rules require that all unrepresented litigants promptly apprise the court and opposing counsel of any change of address in order to facilitate communications between the court and the parties.  *See* N.D.N.Y.L.R. 10.1(b)(2).

5

Immigration and Naturalization Service ("INS"), seeking issuance of a

certificate of citizenship.[3]   Response to Petition (Dkt. No. 26) at 3. The

basis for that application was petitioner's contention that he had

derivatively acquired United States citizenship through his father, who was

born in this country.  Response to Petition (Dkt. No. 26) at 3.

On September 9, 2002, following an investigation prompted by

Shaw's claim, the INS forwarded him a notice of the agency's intention to

deny the application and advising that he had been granted a period of

fifteen days to submit any further information or documents to support his

application.  Response to Petition (Dkt. No. 26) at 4.  By subsequent

decision dated October 8, 2002, the INS denied Shaw's application for a

certificate of citizenship as well as his request for a sixty day extension of

the period within which to file additional evidence.  *See id.* at 5 &

Attachment.

   B.   This Proceeding

---

[3]      On November 25, 2002, President George W. Bush signed into law the
Homeland Security Act, Pub. L. 107-296, 116 Stat. 2135 (Nov. 25, 2002) which, *inter
alia*, created a new Department of Homeland Security ("DHS"). Pursuant to the Act, on
March 1, 2003 the INS was dissolved and its functions were transferred to the DHS
and assigned to its Bureau of Citizenship and Immigration Services.  For the sake of
clarity and continuity, however, I will refer to the agency as the INS for purposes of this
report.

Petitioner filed this habeas petition on February 7, 2002.  Dkt. No. 1.

In his petition, which purported to be brought under 28 U.S.C. § 2241 and

named the United States as the respondent, petitioner asserted that his

conviction is invalid based upon the fact that he is a United States citizen,

and that his court appointed counsel failed to provide him with

constitutionally mandated, effective representation by failing to press that

argument.  *Id.*; *see also* Petitioner's Memorandum (Dkt. No. 2).

By order issued by then-Chief District Judge Frederick J. Scullin, Jr.

on February 25, 2002, petitioner was directed to file an amended petition

to cure certain perceived procedural defects as well as clarify the basis for

seeking relief under section 2241 and the precise nature of his claim.  Dkt.

No. 3.  In response to that order, petitioner filed an amended petition on

March 15, 2002, naming Michael K. Nalley, who at the time was Warden

at FCI Ray Brook, where Shaw was incarcerated, as the respondent.[4]

Dkt. No. 5.  In that amended petition, which reiterates that it is brought

under 28 U.S.C. § 2241, Shaw asserts a single ground for relief, alleging

that he has been unlawfully detained since he is a United States citizen; in

_____

[4]     Shaw's amended petition was accompanied by a second memorandum
outlining the legal arguments raised in support of his petition.  Dkt. No. 6.

7

that petition, Shaw appears to have abandoned his ineffective assistance

of counsel claim.  Dkt. No. 5.  Respondent has opposed Shaw's petition

by memorandum, with supporting documents, filed on November 4, 2002,

Dkt. No. 26, and petitioner has since replied to that opposition, Dkt. No.

27.

Shaw's petition, which is now ripe for determination, has been

referred to me for the issuance of a report and recommendation, pursuant

to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule

72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

A.    Jurisdiction

Shaw's petition is brought pursuant to 28 U.S.C. § 2241.  In his

opposition to the petition, respondent does not take issue with the nature

of the proceeding, instead proceeding to address its merits directly.

This case brings into sharp focus the distinction between petitions

brought under section 2241, and post-conviction motions made pursuant

to section 2255.  Section 2241 has evolved over time from the Judiciary

Act of 1789, ch. 20, § 14, 1 Stat. 81-82, empowering courts to issue writs

of habeas corpus in cases involving prisoners held "'in custody, under or

by colour of the authority of the United States.'" *Triestman v. United States*, 124 F.3d 361, 373 (2d Cir. 1997) (quoting *McCleskey v. Zant*, 499 U.S. 467, 477-78, 111 S. Ct. 1454, 1461 (1991)).  Under the contemporary version of section 2241, "federal courts continue to retain jurisdiction to entertain habeas corpus petitions from federal prisoners 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Triestman*, 124 F.3d at 373 (quoting 28 U.S.C. § 2241(c)(3)).  A petition under that section challenging the execution of the sentence, rather than the conviction or the sentence itself, however, must be brought against the warden of the prison where the petitioner is confined, and must be filed in the court having jurisdiction over that named respondent. *United States v. Koontz*, 1:01-CR-41, 2006 WL 1510143, at *1 (N.D.N.Y. May 31, 2006) (McAvoy, S.J.); *Hernandez v. U.S.*, No. 05 Civ. 1812, 2005 WL 888165, at *1 (S.D.N.Y. Apr. 15, 2005); *Bridges v. Vasquez*, 151 F. Supp.2d 1353, 1357 (N.D. Fla. 2001); 17A Wright, Miller & Cooper, Federal Practice and Procedure § 4268.1 (2nd ed. 1988 & Supp. 2003).

In 1948, Congress enacted section 2255 to provide prisoners with a vehicle allowing them to more efficiently challenge the reason for their detention – the underlying conviction and resulting sentence. *Id.*; *see*

*also*, *e.g.*, *Bridges*, 151 F. Supp.2d at 1357.  Given this historical

perspective, the Second Circuit has noted that while

> [a] motion pursuant to § 2241 generally challenges
> the *execution* of a federal prisoner's sentence,
> including such matters as the administration of
> parole, computation of a prisoner's sentence by
> prison officials, prison disciplinary actions, prison
> transfers, type of detention and prison conditions.
> In contrast, § 2255 is generally the proper vehicle
> for a federal prisoner's challenge to his conviction
> and sentence, as it encompasses claims that "the
> sentence was imposed in violation of the
> Constitution or laws of the United States, or that
> the court was without jurisdiction to impose such
> sentence, or that the sentence was in excess of
> the maximum authorized by law, or is otherwise
> subject to collateral attack."

*Jiminian v. Nash*, 245 F.3d 144, 146-47 (2d Cir. 2001) (quoting 28 U.S.C.

§ 2255) (internal citations omitted) (emphasis in original); *see also*

*Bridges*, 151 F. Supp. 2d at 1357.

In a summary order issued earlier in this case, the Second Circuit

interpreted Shaw's petition as challenging the earlier order of removal

upon which his conviction was predicated.[5]  Mandate (Dkt. No. 46) at 2.

Although it is clear that the issues of Shaw's citizenship and his prior

---

[5]      That summary order was issued by the Second Circuit in response to an
interlocutory appeal by petitioner from this court's denial on October 3, 2002 of his
application for release on personal recognizance, pending disposition of the instant
section 2241 petition.  *See* Dkt. Nos. 23, 46.

10

removal serve as centerpieces for his conviction, it is equally apparent that the present petition challenges his conviction and continued confinement by the respondent pursuant to that conviction.  Such a challenge is quintessentially of the nature contemplated under 28 U.S.C. § 2255.[6]

Given the circumstances presented, while not recommending either dismissal or conversion in light of respondent's failure to raise the argument, I will analyze Shaw's petition as one which focuses upon the propriety of his conviction and resulting sentence, rather than either a challenge of the INS refusal to grant him a certificate of citizenship or of the execution of his sentence, and recommend a finding that this court retains jurisdiction to entertain the petition.

B.    Timeliness

The petitioner's conviction in this matter became final on December

---

[6]    As was previously noted, petitioner has now been released from federal custody and is no longer present in the United States.  These circumstances, however, do no necessarily divest this court of subject matter jurisdiction in light of the potential for collateral consequences associated with Shaw's conviction.  *Spencer v. Kemna*, 523 U.S. 1, 12, 118 S. Ct. 978, 985 (1998) ("it is an 'obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences'") (quoting *Sibron v. New York*, 392 U.S. 40, 55, 88 S. Ct. 1889, 1899 (1968)); *see also*, *e.g.*, *Barker v. Reynolds*, No. 9:98-CV-0732, 2001 WL 1860929, at *2 (N.D.N.Y. Apr. 19, 2001) (Sharpe, M.J.) (citing *Spencer* and *Sibron*); *Binder v. Szostak*, No. 96-CV-840, 1997 WL 176353, at *3 (N.D.N.Y. Apr. 11, 1997) (Pooler, J. and DiBianco, M.J.).

23, 2000, upon the expiration of his time to file an appeal from that conviction.  *See Moshier v. U.S.*, 402 F.3d 116, 118 & n.1 (2d Cir. 2005) (unappealed federal criminal judgment becomes final for purposes of calculating time limit for filing motion to vacate when time for filing direct appeal expires).  Subject to exceptions not applicable in this instance, a motion to vacate that conviction must have been made within one year of that date, or on or before December 23, 2001.  28 U.S.C. § 2255; *see Moshier*, 402 F.3d at 118-19.

The petition in this matter was mailed by the petitioner to the court on February 3, 2002, and thus by that time was already untimely.[7]  The one year limitation period set forth in 28 U.S.C. § 2255 is, however, in the nature of a statute of limitations, and thus is not jurisdictional.  *Moore v. United States*, 173 F.3d 1131, 1134 (8th Cir. 1999); *see also Smith v. McGinnis*, 208 F.3d 13, 17-18 (2d Cir. 2000) (holding that parallel provision of 28 U.S.C. § 2244(d), applicable to federal habeas challenges of state court convictions under 28 U.S.C. § 2254, is not jurisdictional and

---

[7]       While ordinarily this proceeding would be deemed to have been commenced upon the filing of his petition, which occurred on February 7, 2002, *see* Dkt. No. 1, as a prison inmate who is proceeding *pro se* Shaw is entitled to the benefit of the prison mailbox rule, under which his petition is regarded as having been filed when entrusted to the custody of prison officials for mailing to the court.  *Houston v. Lack*, 487 U.S. 266, 270, 108 S. Ct. 2379, 2382 (1988).

thus can be subject to equitable tolling), *cert. denied*, 531 U.S. 840, 121 S. Ct. 104 (2000).  Because respondent has not raised the question of timeliness, the argument is waived, and I will therefore not recommend dismissal of Shaw's petition on this procedural basis.

 C. <u>Merits</u>

 The lynchpin of the argument in support of Shaw's petition is his claim to be a United States citizen, by virtue of his father having been born here.  Petitioner maintains that for this reason, his prior removal on three separate occasions, upon which his conviction from this court was predicated, cannot withstand scrutiny.

 It is well established that "[t]he applicable law for transmitting citizenship to a child born abroad when one parent is a [United States] citizen is the statute that was in effect at the time of the child's birth." *Drozd v. INS*, 155 F.3d 81, 86 (2d Cir. 1998) (quoting *Runnett v. Shultz*, 901 F.2d 782, 783 (2d Cir. 1990)); *see also Tullius v. Albright*, 240 F.3d 1317, 1320 (11th Cir. 2001) (citing *Drozd* and *Runnett*).  The provision which governed in 1958, when petitioner was born, provided that

> [a] person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth

> of such person, was physically present in the
> United States or its outlying possessions for a
> period or periods totaling not less than ten years,
> at least five of which were after attaining the age of
> fourteen years

is considered to be a United States national and citizen at birth.  8 U.S.C.

1401(a)(7) (1952), as reprinted in *Drozd*, 155 F.3d at 86.[8]

In support of his petition, Shaw places heavy reliance upon the

Supreme Court's decision in *Miller v. Albright*, 523 U.S. 420, 118 S. Ct.

1428 (1998) and the Second Circuit's decision in *Lake v. Reno*, 226 F.3d

141 (2d Cir. 2000), *judgment vacated sub nom.*, *Ashcroft v. Lake*, 533

U.S. 913, 121 S. Ct. 2518 (2001).  Both the Second Circuit's initial

decision in *Lake* and the Supreme Court's decision in *Miller,* however,

addressed the constitutionality of section 309(a) of the Immigration and

Nationality Act, 8 U.S.C. § 1409(a) (1952), dealing with the transmission

of citizenship of foreign children born out of wedlock – a circumstance

which does not appear to be presented in this case.  *See Lake*, 226 F.3d

---

[8]     The statute was subsequently amended in 1986 to reduce the required period of parental presence in the United States to five years, at least two of which must have been after attaining the age of fourteen.  *See* Pub. L. No. 99-653, § 12, 100 Stat. 3657 (1986), now codified at 8 U.S.C. § 1401(g).  It is doubtful that petitioner's father could satisfy even this reduced residential requirement since although, based upon facts determined by the INS, it does appear that he remained in the United States for five years after his birth, he cannot satisfy the additional requirement that at least two of those be after the age of fourteen.

at 147-48.  In *Lake,* the Second Circuit found that section 309(a) violated the Equal Protection Clause in its differential treatment of citizen mothers and citizen fathers with respect to foreign-born children born out of wedlock.  226 F.3d at 147-48.  This holding was undermined by the Supreme Court's subsequent decision in *Nguyen v. Immigration and Naturalization Service*, 533 U.S. 53, 73, 121 S. Ct. 2053, 2066 (2001), finding no constitutional violation presented despite the gender-based distinction drawn by section 309(a).  As such, neither *Lake* nor *Miller* presents any impediment, constitutional or otherwise, to application of former section 301(g) of the INA, as it existed in 1958, to petitioner's situation.

The facts uncovered by the INS during its investigation reveal that petitioner cannot satisfy the requirements which were in effect at the time of his birth for establishing derived citizenship, based upon his father's status.  Nothing submitted to this court by Shaw, who bears the burden of proving a constitutional deprivation, *see Jarrett v. Headley*, 802 F.2d 34, 42 (2d Cir. 1986), in support of his petition calls into question this conclusion.  Accordingly, I find that the argument that petitioner was improperly convicted for unlawfully reentering the United States after

removal, without first securing the requisite consent, lacks merit.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

While characterized as one brought under 28 U.S.C. § 2241, Shaw's petition is more appropriately regarded as a motion seeking to vacate his judgment of conviction pursuant to 28 U.S.C. § 2255.  While such a motion brought at the time of filing would have been precluded by the applicable statute of limitations, I recommend that the court overlook this defect in light of respondent's failure to raise it.

Turning to the merits, I find that the contention upon which Shaw's petition is premised, to the effect that he is a United States citizen by virtue of his father's status notwithstanding that the fact he was born in Canada, lacks merit given that the statute in effect at the time of his birth did not give rise to transmission of his father's citizenship to him.  There is therefore no basis to conclude that his removal from the United States was improper, or that his conviction for unlawfully re-entering the company without permission, following removal, was legally defective.  Accordingly, it is hereby

RECOMMENDED that the petition in this matter be DENIED and DISMISSED in all respects.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the clerk adjust its records to reflect the substitution of Todd Craig, the current warden of FCI Ray Brook, as the named respondent; and it is therefore further

ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties to respondent' s counsel electronically and to petitioner by regular mail.

Dated:    March 1, 2007
          Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\prisoner\shaw.wpd

17